No. 22-15916

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**DZ RESERVE AND CAIN MAXWELL, DBA MAX MARTIALIS,**

*Plaintiffs - Appellees.*

v.

**META PLATFORMS, INC, FKA FACEBOOK, INC.,**

*Defendant - Appellant.*

On Appeal from the United States District Court
for the Northern District of California, Case No. 3:18-cv-04978-JD
The Honorable James Donato

## REPLY BRIEF OF APPELLANT META PLATFORMS, INC.
## ─REDACTED─

Elizabeth L. Deeley
Melanie M. Blunschi
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Samir Deger-Sen
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

Andrew B. Clubok
Susan E. Engel
Margaret A. Upshaw
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.clubok@lw.com

March 6, 2023

*Counsel for Appellant Meta Platforms, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................1

I.    THE CLASS DOES NOT SATISFY RULE 23(b)(3)'s PREDOMINANCE REQUIREMENT.............................................3

    A.    Falsity And Materiality Cannot Be Proven On A Class-Wide Basis ...................................................................3

        1.    The district court's decision is indefensible on its own terms........................................................3

        2.    Plaintiffs' alternative grounds for certification all fail ..............8

    B.    Actual Reliance Cannot Be Proven On A Class-Wide Basis .............16

    C.    Resulting Injury Cannot Be Proven On A Class-Wide Basis .............20

II.    THE NAMED PLAINTIFFS CANNOT REPRESENT THE CLASS.........23

    A.    Plaintiffs Cannot Demonstrate Adequacy Or Typicality ...................23

    B.    The Named Plaintiffs Lack Article III Standing To Pursue Their UCL Claim For Injunctive Relief.......................................26

CONCLUSION .....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aaron Private Clinic Management LLC v. Berry*,
   912 F.3d 1330 (11th Cir. 2019) .......................................................29

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................4, 10

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
   568 U.S. 455 (2013)...................................................................7, 10

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) ...........................................................5

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ..........................................................6, 7

*Carney v. Adams*,
   141 S. Ct. 493 (2020)........................................................................28

*Catholic Health Care West v. U.S. Foodservice (In re U.S.
   Foodservice Inc. Pricing Litigation)*,
   729 F.3d 108 (2d Cir. 2013) ...........................................................7, 8

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ........................................................24, 25

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..................................................26, 27, 28

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...................................................13, 16, 22

*Engalla v. Permanent Medical Group*,
   938 P.2d 903 (Cal. 1997) ..................................................................19

*Espinoza v. Ahearn (In re Hyundai & Kia Fuel Economy Litigation)*,
   926 F.3d 539 (9th Cir. 2019) ..............................................................6

**Page(s)**

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)..................................................................19, 21

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................2, 24

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance
      Mortgage Co.)*,
   471 F.3d 977 (9th Cir. 2006) ..........................................................6, 8

*Jenson v. Fiserv Trust Co.*,
   256 F. App'x 924 (9th Cir. 2007) .........................................................6

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ...................................................................18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................28

*Mirkin v. Wasserman*,
   858 P.2d 568 (Cal. 1993) ...................................................................17

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets
      Corp.*,
   68 Cal. Rptr. 3d 828 (Ct. App. 2007) ..........................................20, 23

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods
      LLC*,
   31 F.4th 651 (9th Cir.), *cert. denied*, 143 S. Ct. 424 (2022) .................11, 13, 14

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .............................................................23

*Rogers v. Epson America, Inc.*,
   648 F. App'x 717 (9th Cir. 2016) .........................................................6

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).........................................................................26

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)..............................................................................19

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...................................................................4, 9, 19

*Western Watersheds Project v. United States Department of the*
    *Interior*,
    677 F.3d 922 (9th Cir. 2012) ...............................................21

*Woods v. Coca-Cola Refreshments USA, Inc. (In re Coca-Cola*
    *Products Marketing & Sales Practices Litigation (No. II))*,
    No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021)......................27, 29

## OTHER AUTHORITIES

9th Cir. R. 30-1.2(b)..................................................22

Fed. R. Civ. P. 23(b)(3)...............................................2, 6

1 *McLaughlin on Class Actions* (19th ed., 2022 update)........................21

## INTRODUCTION

Plaintiffs' answering brief only confirms how ill-suited this case is to class certification. Even by Plaintiffs' *own* measure, there is a five-fold range of alleged inflation in the Potential Reach estimates Plaintiffs challenge. A fraud class where over three million members have seen dramatically different representations simply cannot be tried through common evidence. And that problem is compounded here by the fact that each class member saw their unique estimate alongside other individually tailored metrics, and a range of different disclosures. Plaintiffs unsurprisingly cannot identify *any* case where a court has certified a class with anything close to that level of variation between class members.

The district court nonetheless found certification was warranted because there was allegedly at least *some* inflation in all Potential Reach estimates and Potential Reach generally "is an important number." 1-ER-11–12. In other words, the differences within the class could be ignored because Plaintiffs had identified a general subject-matter that consumers purportedly cared about and there was some conduct common to the class. That reasoning confuses the commonality and predominance requirements, defies this Court's precedents, and conflicts with long-standing principles of class-action law—which make clear that "material *variation* in the representations made" generally renders a fraud case "unsuited" to class

treatment. *See* Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment (emphasis added).

Tellingly, Plaintiffs elect not to defend the district court's actual reasoning. Instead, they try to recast the decision below by offering up a series of alternative rationales—ranging from the assertion that the district court made a "factual finding" that everyone in the class was exposed to at least 10% inflation, to the claim that this case is actually about the "default" Potential Reach figure. Those theories and findings are nowhere to be found in the decision below—and are meritless in any event. Ultimately, Plaintiffs' effort to rewrite the district court's opinion just underscores that the decision is indefensible on its own terms.

Plaintiffs are similarly evasive when it comes to the other defects in the class certification order. As to adequacy and typicality, Plaintiffs again try to rewrite the district court's opinion, by claiming it resolved the credibility concerns Meta raised. But the court's order is devoid of any indication that it even considered those concerns. Instead, the court focused on whether the named Plaintiffs could ultimately show reliance. But that was fundamentally the wrong inquiry—*even if* Plaintiffs could show reliance, their testimony reflects serious credibility problems that "threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Under this Court's settled precedents, a class cannot be certified in those circumstances. And on the issue of

2

Article III standing to seek injunctive relief, Plaintiffs' response just makes clear that their asserted harm is precisely the kind of "informational" injury that the Supreme Court has now foreclosed.

For all of these independent reasons, the class certification order should be reversed.

## ARGUMENT

## I. THE CLASS DOES NOT SATISFY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT

### A. Falsity And Materiality Cannot Be Proven On A Class-Wide Basis

The district court certified one of the largest fraud classes in the history of this Circuit, encompassing the many millions of people and entities that have advertised on Meta's platform for almost a decade—despite the fact that those advertisers saw representations that were significantly different in the very aspect alleged to be misleading. Plaintiffs do not even attempt to defend the court's actual reasoning, and their alternate bases for certification are equally unpersuasive.

#### 1. The district court's decision is indefensible on its own terms

The district court found that falsity and materiality were common questions without giving any serious consideration to the enormous variation within the class. The court concluded that even if alleged inflation in the Potential Reach estimates ranged from *de minimis* to over 50%, falsity could still be proven class-wide because Meta's expert did not find that "*no* inflation occurred at all." 1-ER-12–13 (emphasis

added).  And it found materiality susceptible to class-wide proof because Potential Reach is an "important number for advertisers," 1-ER-12, without analyzing the materiality of the alleged inflation in Potential Reach estimates.  *See* Chamber of Commerce Amicus Br. 14-16, ECF No. 15 (explaining that district court improperly conflated materiality of "the *topic* of Meta's alleged misstatements" with materiality of "the alleged misstatements themselves").

That decision cannot stand.  The district court's order takes a broad-brush view of certification that conflates commonality—and whether a defendant has allegedly engaged in some common conduct—with the "far more demanding" predominance requirement, which requires consideration of differences among class members that deprive the class of cohesion.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  In doing so, the order effectively presumes that a jury will view a *de minimis* degree of inflation in an "estimate" and a 50% degree of inflation in that estimate the same way.  But a jury could easily find that a self-professed preliminary "estimate" that was marginally inexact was neither false nor material, while a higher degree of inflation warrants a different result.  In other words, a jury could reasonably evaluate the challenged representations differently, and falsity and materiality thus cannot be resolved "in one stroke" for all class members in this case.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The representations that each class member viewed are simply too different to be adjudicated together.

The variation in inflation alone should have defeated certification, but class-wide resolution is only further precluded by the evolving disclosures and unique Estimated Daily Reach estimates that advertisers viewed alongside their Potential Reach estimates—factors the district court ignored entirely. *See* Opening Brief of Appellant Meta Platforms, Inc. ("OB") 29-32.[1] In fact, under *Berger v. Home Depot USA, Inc.*, the changing disclosures themselves are enough to defeat class certification because each requires "an independent legal analysis." 741 F.3d 1061, 1069 (9th Cir. 2014). And more broadly, both the disclosures and the personalized Estimated Daily Reach estimates must be considered alongside each degree of alleged inflation in the Potential Reach estimates to determine falsity and materiality.[2] There is no way to collectively adjudicate the unique mix of information seen by each advertiser.

Plaintiffs have almost nothing to say on this critical point. And their own cases—none of which was even cited by the district court—only underscore how substantially the district court departed from settled principles in certifying the class.

---

[1] Plaintiffs suggest such contextual information is irrelevant to *reliance*, Appellees' Answering Brief ("AB") 39-40, but do not dispute its relevance to *falsity and materiality*. *See* OB30 & n.2.

[2] Plaintiffs are thus wrong to claim the disclosures are "*classwide* representations," AB38-39, and Plaintiffs' cases (at 39-40) do not consider the circumstances here, where class members viewed different disclosures alongside different representations.

Those cases reflect that class certification is permissible when there is *not* material variation in the representations made to the class. And they all recognize the core principle that variation is the touchstone in determining whether a fraud class may be certified. *See* Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment; *see also* OB21-25.

For example, Plaintiffs invoke this Court's statement in *In re First Alliance Mortgage Company*, that class treatment may be appropriate for "fraud claims stemming from a 'common course of conduct.'" *See* AB29-30 (quoting *Henry v. Lehman Com. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 990 (9th Cir. 2006)). But as Meta explained in its opening brief, OB23, *First Alliance* merely holds that "'slight differences'" in a "standardized sales pitch" do not defeat certification, while reiterating the core principle that a fraud case is *not* suited for class treatment when there is "'material variation in the representations made.'" 471 F.3d at 990 (citations omitted).[3] Similarly, *Blackie v. Barrack*, holds that

---

[3] This Court has repeatedly recognized that the core inquiry under *First Alliance* is the degree of variation in the challenged misrepresentations. *See, e.g.*, *Rogers v. Epson Am., Inc.*, 648 F. App'x 717, 719 & n.8 (9th Cir. 2016) (citing *First Alliance* for proposition that "minor deviations in wording of misrepresentations might not be fatal to class certification"); *Espinoza v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 556, 560 (9th Cir. 2019) (en banc) (similar, upholding certification of settlement-only class where misrepresentations were "uniformly" made through a "nationwide, concerted marketing effort"); *cf. Jenson v. Fiserv Tr. Co.*, 256 F. App'x 924, 926 (9th Cir. 2007) (upholding certification where defendant communicated misrepresentations "to each" class member).

*commonality* is satisfied where "a series of financial reports uniformly misrepresent a particular item in the financial statement." 524 F.2d 891, 903 (9th Cir. 1975). But it expressly acknowledges that *predominance* may well preclude certification for cases involving distinct misrepresentations, even where a "common course of conduct" is alleged. *See id.* at 903 & n.19. And *In re U.S. Foodservice Inc. Pricing Litigation*, likewise holds that certification is appropriate where class members are subject to a "uniform" misrepresentation "susceptible to generalized proof," such that the class's claims will "'prevail or fail in unison.'" *Catholic Health Care West v. U.S. Foodservice (In re U.S. Foodservice Inc. Pricing Litigation)*, 729 F.3d 108, 118-19 (2d Cir. 2013) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)). Far from supporting Plaintiffs' position, these cases confirm the basic principle that the challenged representations must be sufficiently similar to permit aggregate adjudication.

Ignoring that rule, Plaintiffs instead contend these cases stand for the categorical proposition that "numerical variations among misrepresentations do not preclude class treatment." AB32. That is wrong. Plaintiffs' cases allowed for certification in the face of numerical variation only because the numbers were not themselves the challenged representations and were thus irrelevant to determining liability. In *Foodservice*, for example, the relevant misrepresentation was "concealment of *the fact* of a mark-up" in customers' bills; the amount of that mark-

up had no bearing on liability. 729 F.3d at 118-19 (emphasis added). In other words, no jury could reasonably have resolved the class members' claims in different ways simply because one had been overbilled by $100 dollars, and another by only $10 dollars. So too for *First Alliance*—there, the alleged misrepresentation was a standardized sales pitch concealing the existence of hidden fees associated with mortgage loans; plaintiffs' claims did not turn on the precise amount of the hidden charges. *See* 471 F.3d at 985. Here, by contrast, the alleged numerical *inflation* in Potential Reach estimates is itself the challenged representation, and a jury could reasonably assess class members' claims differently depending on whether they viewed an "estimate" that was off by 1% or 50%. *See supra* at 4. Plaintiffs cite no case certifying a class in remotely similar circumstances. And the fact that these are the best cases Plaintiffs can muster from any court (in any circuit) simply underscores the extraordinary nature of the class certification order here.

### 2. *Plaintiffs' alternative grounds for certification all fail*

Plaintiffs attempt to avoid the fundamental defects in the district court's order by offering a series of alternate, purportedly "uniform" misstatements sufficient to support class certification. But none of Plaintiffs' alternative bases suffices, and Plaintiffs' attempts to rewrite the district court's certification order only confirm its defects.

1.  Plaintiffs offer no argument for how a class could be certified if members were exposed to alleged inflation ranging from *de minimis* to over 50%—effectively conceding certification would be improper in that circumstance. Instead, Plaintiffs insist that the district court "credited" their expert's contention that Potential Reach estimates were always inflated by at least 10%, and made a "factual finding" to that effect. AB33-34; AB35-36; *see also* AB29, 41-42 (similar).

As discussed below, no such factual finding appears in the district court's order. *Infra* at 11-13. But, more fundamentally, even if the district court had found a baseline of 10% inflation, this class still would not be appropriate for certification. The central problem with this class is not that some members of the class may have seen only small amounts of inflation, but that the statements class members were exposed to are simply too varied to be tried by common evidence. Rule 23(b)(3) requires that common issues predominate. And a "common contention" is one whose "truth *or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 (emphasis added). Under that standard, the jury must be able to make an up-or-down determination as to an issue for the *whole* class. But, while Plaintiffs unilaterally deem 10% inflation a "material amount," *see* AB25, the jury may well disagree. And if the jury were to find that 10% inflation in a Potential Reach estimate were *not* material, there would be no

reason for that judgment to dispose of the claims of class members who viewed estimates with 40% or 50% inflation.

Put another way, it is not enough that a class can *prevail* "in unison" on an issue, if it cannot also "*fail* in unison." *Amgen*, 568 U.S. at 460 (emphasis added). Treating such a failure of proof as a "class-wide" resolution of all claims would eviscerate the potentially meritorious claims of class members who saw levels of inflation higher than 10%, impermissibly altering substantive rights. *See Amchem*, 521 U.S. at 613-15. But the alternative—permitting some of those claims to go ahead—would necessarily devolve into individualized inquiries.[4] In that circumstance, it would be impossible to know who in the class had lost their claim without determining, class member-by-class member, whether a person saw an inflation level at, below, or above the 10% level.

Ultimately, Plaintiffs' theory is an effort to circumvent the central purpose of the predominance inquiry, which is to determine whether the class is "sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. After all, a plaintiff can *always* select the weakest claim among a diversely affected class, and argue that

---

[4] Plaintiffs are thus wrong to dismiss out-of-hand the notion that class certification was improper because "some inflation was too high." AB25. The problem is not that inflation was "too high" per se, but that the claims of those class members are fundamentally different from those that Plaintiffs will seek to prove at trial in their individual case.

so long as the weakest claim is proven, that necessarily will resolve all of the stronger claims in the class. Indeed, here, while Plaintiffs have arbitrarily selected "10%" as the "significantly inflated" level, there is nothing, under their theory, to prevent them from obtaining certification based on any number—say, 1% or even lower—on the basis that if a jury finds that number material, liability will be established for the entire class. But the fact that Plaintiffs could obtain certification by positing *any* number as a supposed "minimum" just underscores that their theory has no limit. Plaintiffs' proposed end-run around the predominance requirement should be firmly rejected.

2. In any event, even if Plaintiffs' "minimum" inflation theory were permissible, it cannot save the district court's certification decision. Plaintiffs appear to acknowledge that, if the class is to be certified on such a theory, the district court must at least make a "factual finding[]" that every class member viewed an estimate above the "minimum" 10% level. AB35-36; *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.) (en banc) (holding that party seeking certification must prove by preponderance of the evidence any fact necessary for certification), *cert. denied*, 143 S. Ct. 424 (2022).

Plaintiffs claim that the court made such a finding, but their only explanation for that reading is that the court "specifically cited the portion of" their expert's report making that contention. AB29. The district court, however, cited Plaintiffs'

expert report in *describing* its contentions, not in "crediting" them. The district court explained that Plaintiffs' expert "concluded" that all Potential Reach estimates "would be significantly inflated above the actual number of people the advertisement could reach." 1-ER-12. But, instead of endorsing that conclusion, it then "specifically cited" (AB29) *Meta's* conflicting expert evidence, which showed that "sources of inflation are not distributed evenly across all smaller demographics that an advertiser might choose," so inflation is *not* uniform in all Potential Reach estimates. 1-ER-12 (citing 4-ER-470–71); *see also* 4-ER-457–60, 465–74.

The district court did not resolve that dispute either way—it said nothing about which expert's analysis was more persuasive or reliable, provided no evaluation of the experts' methodologies, and articulated no reason why one should prevail over the other. Indeed, it never even held an evidentiary hearing on the dispute, notwithstanding Meta's request for one. *See* Mot. for Evidentiary Hrg. 1-3, Dkt. No. 309. There is simply no basis to conclude the district court resolved a highly technical debate between experts, over a critical question in the case, without a word of explanation. And the court's subsequent reasoning makes clear that it did not believe resolving this question was necessary. Rather, it concluded the dispute was irrelevant, because Meta's expert "does not conclude that *no* inflation occurred at all," but only that inflation might vary for "any given targeting criteria." 1-ER-12–13 (emphasis added). In the district court's view, class-wide proof of Plaintiffs'

claims was somehow possible notwithstanding that variation. 1-ER-13; *see also* 1-ER-11.[5] Plaintiffs repeatedly disclaim that aspect of the district court's holding, *see* AB3, 25, 35-36, but the words on the page are inescapable.

The district court's failure to resolve this factual dispute precludes certification under this Court's precedent. In *Ellis v. Costco Wholesale Corp.*, the Court vacated a district court decision that failed to resolve a "battle of the experts" over facts related to commonality. 657 F.3d 970, 982, 984 (9th Cir. 2011). In doing so, the Court made clear that factual disputes as to whether the class should be certified must be resolved before certification. *See id.* at 983-84; *see also Olean*, 31 F.4th at 667 (explaining that a district court must "resolve disputes about historical facts if necessary to determine whether the plaintiffs' evidence is capable of resolving a common issue central to the plaintiffs' claims").

That rule squarely applies here. If Plaintiffs are correct that a minimum 10% inflation would constitute class-wide evidence of their claims, then the district court was required to resolve the expert dispute as to whether that baseline level of inflation actually existed in order to determine whether "plaintiffs' evidence is

---

[5] Plaintiffs repeatedly state that Meta "admitted" that Potential Reach was ███████████████. AB42 (citing 4-SER-830); *see also, e.g.*, AB34. But as is clear from the expert dispute described in the district court's order, Meta did not admit anything of the sort. Plaintiffs cite a single document, never cited by the district court, that in fact pertains to an entirely different metric.

capable of resolving a common issue central to the plaintiffs' claims." *Olean*, 31 F.4th at 668. By failing to resolve that dispute, the district court violated this Court's precedent.

3. In the same breath in which they defend their 10% inflation theory, Plaintiffs also contend class certification is permissible because their theory actually turns only on the word "people," *not* on the numerical estimates themselves. AB28-29. But again, that was not the basis for the district court's certification order, and it makes no sense to divorce the label from the estimates themselves.

Even if the term "people" is a common representation, what allegedly makes the statement *materially false—i.e.*, the alleged *mis*representation—is the numerical "discrepancy between people and accounts." 1-ER-11. If there were only a *de minimis* difference between the number of people and accounts in a particular target audience, Plaintiffs could not show the use of the term "people" was materially misleading for that Potential Reach estimate. Analyzing falsity and materiality for the term "people" thus requires the exact same analysis of varying degrees of inflation discussed above. Put differently, Plaintiffs have identified a common *word*, but they have not identified a common *misrepresentation*. That is why the district court did not certify the class based merely on the term "people," but instead focused on the "gravamen of the lawsuit"—allegations that Meta "*inflated* its potential advertising reach to consumers." 1-ER-2 (emphasis added); *see also* 1-ER-12–13.

And it is that alleged inflation that varied drastically between advertisers, precluding class certification. *See supra* at 3-8.

4. Plaintiffs' last effort to conjure a uniform statement is to contend that class certification was appropriate because all class members were shown a *default* Potential Reach estimate, before targeting, that was "always inflated by at least 33%" and "at any given time was inflated by the same amount." AB29. Again, that was not the basis for the district court's certification order. While the district court noted in discussing *typicality* that advertisers "were shown the same default Potential Reach" before targeting, 1-ER-6, it did not even mention default Potential Reach in its predominance analysis, and it did not mention "inflation" in default Potential Reach estimates *anywhere* in its order.

Nor does default Potential Reach provide any basis for class certification. "Default" Potential Reach is presented to advertisers *before* they select the targeting criteria for their ad campaign, and throughout the majority of the class period, it was based on a nationwide audience of ages 18 and above. 4-ER-426. Because advertisers generally disfavor such an undefined audience for their ads, however, only 1.2% of ad sets use a default Potential Reach estimate. 5-ER-556–57. In all other instances, the default estimate is superseded by the particular estimate produced by the unique set of targeting criteria selected by each advertiser for each ad set. It would make no sense to certify a class of over three million advertisers on

the basis of a statement that almost no advertisers even used. In fact, in this case, one named Plaintiff *never* bought an ad with the default Potential Reach, and the other did so for less than one half of one percent of its ad campaigns, *id.*—so named Plaintiffs could not properly represent a class for purposes of challenging inflation in default Potential Reach estimates.

In any event, even "default" Potential Reach estimates were not uniform across the class period, *see* FER-7, 1-SER-199, 3-SER-399, and the accompanying contextual information, including Meta's disclosures and other individually tailored metrics, would likewise have to be considered in assessing the falsity and materiality of "default" Potential Reach estimates for each class member. *See* OB29-32; *supra* at 5. Moreover, Meta submitted expert evidence disputing Plaintiffs' contention that default Potential Reach was always inflated by 33%. *See* 4-ER-444–66. As with the expert dispute regarding the alleged 10% baseline, the district court would, at a minimum, have to consider that dispute before certifying a class based on default Potential Reach. *Ellis*, 657 F.3d at 983. Plaintiffs' attempt to inject uniformity into this dissimilar class through the "default" estimates thus likewise fails.

### B. Actual Reliance Cannot Be Proven On A Class-Wide Basis

The same variation that precludes class-wide proof of falsity and materiality similarly precludes class-wide proof of reliance. *See* OB32-41. But, as with falsity and materiality, the district court ignored that variation. It applied a presumption of

reliance without even acknowledging that such a presumption applies only when "the same material misrepresentations have actually been communicated to each member of a class." *Mirkin v. Wasserman*, 858 P.2d 568, 574-75 (Cal. 1993) (emphasis omitted).

Plaintiffs again defend that approach only by asserting the district court found all class members were exposed to "significantly inflated" Potential Reach estimates. AB41-42 (quoting 1-ER-12). But the district court never made that factual finding, *see supra* at 11-13, and even if it had, advertisers who viewed Potential Reach estimates with inflation as low as 10% to over 50% still have not all seen "the same material misrepresentations." *Mirkin*, 858 P.2d at 574-75 (emphasis omitted). No presumption can therefore be triggered under California law.

Plaintiffs attempt to distinguish *Mirkin* and Meta's other cases as involving "exposure" rather than differing representations, but that is a distinction without a difference. AB43-44. The relevant question for class certification is not whether all class members were exposed to *any* representation by the defendant; it is whether all class members were exposed to the *same* alleged misrepresentation. And, by definition, a class member whose Potential Reach estimate had only *de minimis* inflation, or even 10% inflation, has not been exposed to the same statement as a class member whose Potential Reach estimate has 50% inflation. No presumption of reliance can apply on those facts, because the fundamental problem with varied

representations remains—if the jury's materiality finding may not apply uniformly to the entire class, then any inference of reliance premised on that materiality finding likewise cannot be applied class-wide. Unsurprisingly, Plaintiffs cite no case extending the presumption of reliance to such circumstances.

Even if the presumption of reliance could apply, Meta is still entitled to rebut that presumption by challenging individual class members' reliance at trial. *See* OB37-41. Plaintiffs respond by arguing that Meta cannot show a lack of *materiality* because materiality is an "objective" inquiry. AB44-48. But even if a misrepresentation is material, any resulting presumption of reliance must be rebuttable as to the individual reliance of each class member. And, here, the record indicates that efforts to rebut the presumption will overwhelm the class with individualized inquiries, because Plaintiffs' own evidence shows that *21%* of the class likely did not rely on Potential Reach inflation in setting their budgets. OB37-38.[6] There is thus concrete evidence indicating that individualized reliance issues

---

[6]    Plaintiffs contend that 9.3% of advertisers, not 21%, failed to adjust their budgets in response to Potential Reach inflation. AB46. Meta's expert analysis shows that 21% is the relevant figure for targeted Potential Reach estimates, *see* 2-ER-53–54, but in any event, the fact that even Plaintiffs admit nearly a *tenth* of the class likely did not rely on alleged inflation in Potential Reach estimates confirms that litigating individual reliance issues in this case will defeat predominance. And while Plaintiffs assert that "subjective preferences of individual survey respondents" are irrelevant to materiality, AB46-47, those preferences are plainly relevant to reliance, which turns on "a plaintiff's subjective motivations in making a purchase." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 890 n.14 (Cal. 2011).

will go well beyond "pick[ing] off the occasional class member" in this case. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014).

Plaintiffs have no meaningful response to this point. Instead, they suggest in passing that the individualized differences here would not disprove reliance. AB47. But that is simply wrong. A jury could easily find, for example, that Potential Reach estimates played *no* role, much less "a substantial part," in the purchasing decisions of a Fortune 500 company that uses a marketing consultant with proprietary metrics, or a long-time advertiser that prioritizes conversions over reach and has extensive data on actual performance from past ad campaigns. *See Engalla v. Permanent Med. Grp.*, 938 P.2d 903, 976-77 (Cal. 1997) (explaining that reliance requires that representation "played a substantial part" in consumer's decision). Those challenges will require individualized inquiries incompatible with class treatment. Simply ignoring this problem, as Plaintiffs request, would turn a rebuttable presumption into an irrebuttable one, impermissibly affording the parties "different rights in a class proceeding than they could have asserted in an individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016); *see also Dukes*, 564 U.S. at 367 (explaining that depriving defendants of right to litigate "defenses to individual claims" violates Rules Enabling Act).

### C.    Resulting Injury Cannot Be Proven On A Class-Wide Basis

Finally, Plaintiffs cannot establish through class-wide proof that each member of the class suffered an injury with a "causal connection" to their "reliance on the representations." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 68 Cal. Rptr. 3d 828, 861 (Ct. App. 2007) (citation omitted).   The district court's analysis on this element was, again, completely unmoored from the relevant legal standard—the court concluded class-wide proof of injury was possible because Meta's expert did not conclude "that no inflation occurred at all." 1-ER-12–13.  But that is a non sequitur.  Merely pointing to the alleged misrepresentation (*i.e.*, the inflation) does not show that class members were *injured* as a result of that representation.   Plaintiffs do not make even the slightest effort to defend that rationale.

Instead, Plaintiffs urge that their "price premium" theory was sufficient to prove resulting injury on a class-wide basis.  Under that theory, Plaintiffs disclaim any effort to show injury that is causally connected to each class member's individual reliance, and instead claim that because *some* advertisers relied on inflation in their Potential Reach estimates to increase their budgets, *all* class members—including those who did not even look at Potential Reach estimates— paid higher auction prices.  *See* 5-ER-619–20, 627; *see also* 5-ER-651; 5-ER-659– 60, 662–63.  But as Meta explained in its opening brief, that theory rests on the

premise that the relevant market is efficiently assimilating a defendant's misrepresentations into prices across the board. *See* OB42-45. And that legal premise simply does not hold outside the context of the "highly regulated market for publicly traded securities," 1 *McLaughlin on Class Actions* § 5.55 (19th ed., 2022 update), where it is understood that "the market price of shares . . . reflects all publicly available information." *Halliburton*, 573 U.S. at 268 (citation omitted). Indeed, such a presumption is an especially poor fit in light of the many unique features of Meta's ad auction that impact prices from auction to auction. *See* OB44.

In response, Plaintiffs contend that Meta waived this argument because Meta "never used the phrase 'efficient market'" below. AB50. But waiver does not turn on whether a litigant uses the same precise phrasing as it did in the district court. Meta's challenge to Plaintiffs' "price premium" theory of injury is the same essential challenge raised below. *Compare* 4-ER-347–48, 335 (arguing that Plaintiffs improperly ignored "marketplace realities that would affect product pricing" and discussing unique features of ad auction (citation omitted)), *with* OB34-35 (similar); *see also* Opp. to Mot. to Strike 6-7, ECF No. 54. Meta's further elaboration on appeal does not constitute a *new* argument, and is fairly presented for this Court's consideration. *See, e.g.*, *W. Watersheds Project v. U.S. Dep't of the Interior*, 677

F.3d 922, 925-26 (9th Cir. 2012) (rejecting waiver argument where party merely provided more comprehensive legal analysis on appeal). [7]

On the merits of the argument, Plaintiffs simply declare that they did prove all class members "paid inflated prices" due to allegedly inflated Potential Reach estimates. AB51. But Meta specifically refuted that contention with its own expert evidence. *See* 4-ER-329 n.3, 446, 448–49. The district court never weighed in on that dispute, and Plaintiffs cannot now invoke a contested factual proposition that the district court never resolved to support the certification order. *See Ellis*, 657 F.3d at 983.

Plaintiffs also broadly assert that this Court has upheld "price premium damages models." AB52. But the fact that some models in other cases have been upheld does not mean that those models are appropriate *in this case*. And in any event, the Ninth Circuit authority Plaintiffs cite is inapposite, because none of those

---

[7]   Plaintiffs suggest that Meta "misleads the Court" by omitting from its Excerpts of Record two pages of Plaintiffs' expert report stating "that the type of auction" Meta uses is "economically efficient." AB51 (citing 4-SER-577–78). But Plaintiffs conflate economic efficiency—the idea that an "item [will be] awarded to the bidder with the highest value for it," *see* 4-SER-577—with the *legal* "efficient market" hypothesis. Those two concepts are distinct, and Meta's challenge to the legal premise of Plaintiffs' injury theory does not turn on Plaintiffs' expert report. In any event, Plaintiffs were free to include any material they saw fit in their own Supplemental Excerpts of Record. *See* 9th Cir. R. 30-1.2(b). There are no grounds for suggesting wrongdoing simply because the parties disagree on the relevance of some record material.

cases upholds a "price premium" model like Plaintiffs' for purposes of establishing *injury* in a common law fraud case. For example, *Pulaski & Middleman, LLC v. Google, Inc.*, involved claims under California consumer protection statutes that do not even require individualized showings of injury for purposes of liability. 802 F.3d 979, 985-86 (9th Cir. 2015) (explaining that claims under Unfair Competition Law and False Advertising Law do not require "individualized proof of deception, reliance, and injury" (citation omitted)). Just the opposite is true for California's common law fraud cause of action: "Deception without resulting loss *is not* actionable fraud." *OCM Principal*, 68 Cal. Rptr. 3d at 860-61 (emphasis added) (citation omitted). That means proof of injury will require individualized inquiries into whether each of the over three million advertisers in the class actually paid more in any given auction as a result of allegedly inflated Potential Reach estimates. Those inquiries are not suitable for class certification.

## II. THE NAMED PLAINTIFFS CANNOT REPRESENT THE CLASS

### A. Plaintiffs Cannot Demonstrate Adequacy Or Typicality

Plaintiffs do not dispute the core legal principle that class representatives with serious credibility problems are inadequate and atypical to represent a class. *See* OB50-54. Instead, they attempt to gloss over the district court's legal error by implying that the district court rejected Meta's credibility concerns. *See* AB54. But again, Plaintiffs' reading of the district court's order does not withstand scrutiny.

23

The district court made no determination about named Plaintiffs' credibility. Instead, it misconstrued Meta's arguments as merits "questions of reliance and UCL standing" and improperly set them aside. 1-ER-7–8. But, whether or not Plaintiffs can ultimately demonstrate reliance, their inconsistent and unreliable testimony throughout the litigation threatens to shift the focus of the litigation and detract from the claims of the class. *See, e.g.*, *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726-28 (7th Cir. 2011); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). The district court erred in failing to even consider that risk.

Plaintiffs also purport to dispute the credibility concerns Meta raises. *See* AB53-56. But in doing so, they merely repeat the district court's error by defending their reliance on the merits, while ignoring the underlying testimony that raises adequacy and typicality concerns. As to DZ Reserve, Plaintiffs claim that Daniel Ziernicki, the owner and operator of DZ Reserve, "lowered his spending," which "is consistent with [his] testimony" that he was deterred from buying ads due to Potential Reach inflation. AB53. But whether or not Ziernicki was actually deterred from buying ads, Ziernicki lacks credibility because he stated at his deposition that he was no longer buying ads on Facebook, but then admitted—*after* being confronted with direct evidence—that he had in fact started other businesses, which were used to buy additional Facebook ads. *See* 4-ER-377, 379–82, 393–94 (admitting ownership of companies he had previously omitted and claiming none

advertised on Facebook); 5-ER-548 (summarizing purchasing data from those companies).[8] It is simply not believable that Ziernicki forgot about $40,000 in recent ad purchases, 5-ER-548, especially during a period when he was actively suing Meta over its advertising practices and making a concerted effort to conceal his purchases. *See* OB51-52. This is not some minor inconsistency. It is the type of concrete, record-based contradiction that raises "serious doubts" about the "truthfulness" of his testimony. *CE Designs*, 637 F.3d at 726-28.

Plaintiffs' arguments regarding Maxwell similarly miss the mark. Plaintiffs argue that Maxwell was not "incapable of seeing and relying on Potential Reach," even if he used a tutorial. AB54. But Maxwell himself testified that he did exactly what an ad-buying tutorial that never mentioned Potential Reach told him to do. *See* OB52. And the documentary evidence of his budgeting decisions specifically refutes his claimed reliance on Potential Reach. *See id.* Whether or not a jury might ultimately believe Maxwell's claims, it is plainly not typical to have record evidence directly undermining a plaintiff's purported reliance.

---

[8]   Ziernicki repeatedly claimed he did not recall whether he owned "any other businesses" beyond those he had listed until Meta's counsel brought each one to his attention. *See, e.g.*, 4-ER-377, 379–80, 388–89.

The district court did not even address the contradictory evidence in the record before permitting named Plaintiffs to act as representatives for the millions of advertisers in the class.  That error warrants reversal, or at a minimum, vacatur.

### B. The Named Plaintiffs Lack Article III Standing To Pursue Their UCL Claim For Injunctive Relief

1.  Plaintiffs assert a purely "informational injury" with no "downstream" adverse consequence, but that "cannot satisfy" Article III's concreteness requirement under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) (citations omitted).  The district court's contrary conclusion rested on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)—which *TransUnion* supersedes, and which does not help Plaintiffs regardless.  Plaintiffs' rejoinders lack merit.

Plaintiffs first claim that *TransUnion* is irrelevant because they "do not assert a so-called 'informational injury.'"  AB58.  But Plaintiffs' own characterization of their asserted future injury—an unwillingness to buy Meta ads "because Potential Reach is false or misleading"—is the definition of an informational injury.  *Id.*  They are complaining about allegedly not getting reliable *information* from Meta and would consider buying Meta ads again so long as the information advertised is accurate.  *See id.* (failing to dispute the point as to DZ Reserve and confirming that Maxwell cares about getting "good data" rather than "bad data").  That informational injury is even more abstract than the one at issue in *Davidson*.  *See* OB57.

Plaintiffs also say that *Davidson* survives *TransUnion* because *Davidson* did not involve "a purely informational injury." AB58. But *Davidson* expressly describes the injury at issue there as an alleged "inability to rely on the validity of the *information* advertised on [the defendant's] wipes." 889 F.3d at 971 (emphasis added). That is just the sort of freestanding informational injury that *TransUnion* precludes.

Moreover, even if *Davidson* remains good law, Plaintiffs' claims still fail. Plaintiffs' own principal authority confirms the point. *See* AB58-59 (citing *Woods v. Coca-Cola Refreshments USA, Inc. (In re Coca-Cola Products Mktg. & Sales Practices Litig. (No. II))*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021)). In *Coca-Cola*, this Court held that two plaintiffs *lacked* a concrete injury because they just wanted to buy accurately labeled soda, "regardless of whether it contained chemical preservatives or artificial flavors." 2021 WL 3878654 at *2. Similarly, Plaintiffs just want to buy accurately labeled Meta ads, regardless of whether the ads live up to the "as advertised" Potential Reach estimates that were allegedly inflated. *Id.* at *1. Plaintiffs' bare "desire for [Meta] to truthfully label its products" in the future is "insufficient"—even if, like in *Coca-Cola*, that abstract desire affects their purchasing decisions. *Id.* at *2.

2.  Plaintiffs also have not established an "imminent" future injury, which is an independently dispositive defect in their Article III standing to seek injunctive relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

According to Plaintiffs, "[a]ll that is required" for an imminent future injury is a stated "'desire' to purchase the product again." AB59. That assertion contradicts decades of precedent. As the Supreme Court has repeatedly explained, the mere "profession of an 'inten[t]'" to do something—or a desire, to use Plaintiffs' parlance—"without any description of concrete plans" or "specification of *when*" the action will be taken, is "simply not enough" to show an "'imminent injury.'" *Lujan*, 504 U.S. at 564 (alteration and italics in original) (citation omitted); *accord Carney v. Adams*, 141 S. Ct. 493, 502 (2020).[9]

But Plaintiffs lack even a definitive "profession of an 'inten[t]'" to buy Meta ads in the future if Potential Reach estimates are altered or removed, much less the requisite "concrete plans." *Lujan*, 504 U.S. at 564 (alteration in original) (citation omitted). Their answering brief does not dispute that DZ Reserve said nothing *at all* about its future intent. *See* OB59. And Plaintiffs concede that Maxwell, when asked whether he would ever buy Meta ads again, said only "I *think* I would if I knew I

---

[9]  *Davidson* does not support a contrary rule. *Davidson*'s imminence finding rested not just on the plaintiff's "'desire to purchase [the defendant's] wipes,'" but also on the fact that she "'regularly visit[ed] stores'" where the wipes were sold and was "continually presented with" the opportunity to buy them. 889 F.3d at 970.

was getting good data." AB60 (emphasis added) (quoting 1-SER-275). That equivocal statement about Maxwell's future intent is clearly not enough to establish an imminent injury for purposes of Article III.[10] *See, e.g.*, *Coca-Cola*, 2021 WL 3878654 at *2 (finding no standing where plaintiffs stated only "that they would 'consider' purchasing" defendant's product).

---

[10] Plaintiffs' termination of their business operations confirms as much. That DZ Reserve's corporate entity and the tax ID associated with Maxwell's business are technically "still active" does not show a concrete plan to revitalize these dormant businesses. *See, e.g.*, *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1337 (11th Cir. 2019). Nor does the fact that Maxwell is the named plaintiff here, as he has no concrete plans to buy Meta ads for *any* business.

## CONCLUSION

For the foregoing reasons, the district court's class certification order should be reversed, and this case should be remanded for further proceedings.

Dated: March 6, 2023                    Respectfully submitted,

                                        */s/ Andrew B. Clubok*

Elizabeth L. Deeley                     Andrew B. Clubok
Melanie M. Blunschi                     Susan E. Engel
Nicholas Rosellini                      Margaret A. Upshaw
LATHAM & WATKINS LLP                    LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000       555 Eleventh Street, NW, Suite 1000
San Francisco, CA  94111                Washington, DC  20004
                                        (202) 637-2200
Samir Deger-Sen                         andrew.clubok@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020

*Counsel for Appellant Meta Platforms, Inc.*

30

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 22-15916

I am an attorney for Appellant Meta Platforms, Inc.

This brief contains 6,897 words, excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Andrew B. Clubok*          **Date:** March 6, 2023